**SIGNED THIS: February 12, 2007**

**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| TAMMY L. HALL, | ) | |
| | ) | Case No. 06-71296 |
| Debtor. | ) | |

# O P I N I O N

The issue before the Court is whether the Debtor's Amended Chapter 13 Plan ("Plan") should be confirmed over the objection of the Chapter 13 Trustee. The Trustee objects to confirmation because he claims that the Debtor is not contributing all of her "projected disposable income" for the applicable commitment period to the Plan. 11 U.S.C. §1325(b)(1)(B).

The Debtor, Tammy L. Hall, filed a petition pursuant to Chapter 13 of the Bankruptcy Code on September 26, 2006. The

Debtor is married, but her husband did not join her in filing the bankruptcy petition. The Debtor's Statement of Financial Affairs shows that she had no income in 2004, 2005, or in the first nine months of 2006.

The Debtor and her husband own a home valued at $144,783. The Debtor scheduled a $110,000 secured mortgage debt on the property and claimed a $15,000 homestead exemption in the property. The Debtor has also scheduled an ownership interest in another house which is held in a joint revocable trust. This second house is valued at $66,462 and there are no liens against it. She values her personal property at $300.

The Debtor scheduled a total of $69,717.86 in unsecured claims, of which over $69,000 is attributable to 27 credit cards. Neither Schedule F nor Schedule H identifies her husband as a co-debtor on any of the unsecured debt.

The Debtor's original Schedule I showed her as unemployed and with no income. The Debtor's Amended Schedule I, dated December 13, 2006, shows the Debtor as having been employed as a clerk at Video Bank for two weeks. She now has monthly gross income of $812.50 and nets $730.95 after deducting only mandatory income tax and Social Security withholdings. Her husband, who has worked as a maintenance engineer at Illinois State University for 26 years, has gross monthly income of $5,464.83 and nets $4,038.06 per month. An amended Schedule J shows current monthly expenditures of

$3,634.20.

The Debtor filed the required Form B22C, Statement of Current Monthly Income and Calculations of Commitment Period and Disposable Income ("CMI"), along with her original petition. The CMI calculations resulted in an applicable commitment period of five years. Disposable income, which was determined under §1325(b)(3), was calculated to be $331.37.

The Debtor's Amended Chapter 13 Plan proposes to pay $455 for the first three months, and $731 for the final 57 months, for a total of $43,032, over the life of the Plan. The Debtor's husband will continue to make the mortgage payment to the sole secured creditor scheduled and, accordingly, all amounts paid into the Plan will be used to pay administrative expenses and unsecured creditors. The Debtor calculates that a 54% dividend will be paid to unsecured creditors.[1]

Despite the fact that the Debtor is paying into the Plan five cents more each month than she is actually netting, the Trustee has filed an objection to the Plan on the grounds that she is not contributing all of her projected disposable income to the Plan. The Trustee has made his own adjustments to the Debtor's CMI to

---

[1] The Debtor's Chapter 13 filing appears to based on a desire to save the second parcel of real estate by paying to unsecured creditors not less than they would receive if the Debtor's estate were liquidated under Chapter 7 of the Code. 11 U.S.C. §1325(a)(4). The Trustee does not challenge that the proposed payments meet that test.

reflect her new job. Based on these adjustments, the Trustee figures that the Debtor has disposable income each month of $1,167 and that the Debtor must contribute that $1,167 each month in order to satisfy the projected disposable income requirements of §1325(b)(2). Thus, the Trustee would require the Debtor to contribute $436 more to the Plan than she actually nets each month.

There are several problems with the Trustee's position. First, the Trustee's argument is based, in part, on amendments he has made to the Debtor's CMI to reflect her post-petition change in employment status. However, the CMI is an historical document that looks back at the Debtor's income. The CMI requires inclusion of "current monthly income" which is "the average monthly income from all sources that the debtor receives...without regard to whether such income is taxable income, derived during the 6-month period... immediately preceding the date of the commencement of the case." 11 U.S.C. §101(10A)(A)(i). Because the Debtor did not obtain her employment until after she filed her bankruptcy petition, it would have been impossible for her to include such income in her CMI. The CMI need not be amended to address post-petition changes in a debtor's financial circumstances or to calculate projected disposable income which ultimately determines the amount of plan payments.

The Trustee's argument is further undercut by his erroneous assumption that §1325(b)(2) requires a Debtor to pay to unsecured

creditors the amount calculated at line 58 of a CMI. "Disposable income" as calculated at line 58 of a CMI is not the same as the "projected disposable income" required by §1325(b)(1)(B). In re Grady, 343 B.R. 747, 750-51 (Bankr. N.D. Ga. 2006).

One court has summarized the emerging line of authority on this issue as follows:

> [T]he historical "disposable income" calculation newly created under §1325(b)(2) is not dispositive of the "projected disposable income" amount needed to fund a Chapter 13 plan. "[P]rojected disposable income" is different from "disposable income" and. . . Congress, by leaving the word "projected" in §1325(b)(1)(B), intended a distinction between the terms. . . [T]he statutory term projected disposable income to be received in the applicable commitment period "requires the Court to consider both future and historical finances of a debtor in determining compliance with section 1325(b)(1)(B)." . . . This Court therefore treats the CMI analysis as the initial but not the ultimate measure of the debtor's financial condition and ability to fund their plan.

In re Foster, 2006 WL 2621080 *6 (Bankr. N.D. Ind.) (citations omitted) (emphasis in original). This Court agrees with Foster and with the many courts that have come to similar conclusions. *See* In re Ward, 2007 WL 63580 *2 (Bankr. W.D. Mo.) ("[T]he phrase 'projected disposable income' in §1325(b)(1)(B) cannot mean that we are to mechanically apply the means test to determine how much should be paid into the plan for payment of unsecured creditors.") *See also*, In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006); In re Fuller, 346 B.R. 472, 485 (Bankr. S.D. Ill. 2006).

The real thrust of the Trustee's argument is that the income of the Debtor's non-filing spouse should be considered in

determining the Debtor's disposable income. There was support for this position prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). *See* In re Williamson, 296 B.R. 760, 764 (Bankr. N.D. Ill. 2003); In re McNichols, 249 B.R. 160, 169 (Bankr. N.D. Ill. 2000); In re Belt, 106 B.R. 553, 563 (Bankr. N.D. Ind. 1989). Under BAPCPA, however, only the amounts expended by the non-debtor spouse on a regular basis for household expenses are included in a debtor's "current monthly income." This change is explained in In re Quarterman, 342 B.R. 647 (Bankr. M.D. Fla. 2006) as follows:

> Congress amended the definition of disposable income, in section 1325(b)(2), to state that disposable income means "*current monthly income* received by the debtor ... less amounts reasonably necessary to be expended – (A)(i) for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. §1325(b)(2) (2005) (emphasis added). According to section 101(10A), "[t]he term 'current monthly income' – (A) means the average monthly income from all sources that *the debtor receives (or in a joint case the debtor and the debtor's spouse receive*) without regard to whether such income is taxable ... derived during the 6-month period ending on –(i) the last day of the calendar month immediately preceding the date of the commencement of the case...." 11 U.S.C. §101(10A) (2005) (emphasis added). The parenthetical stating that, in a joint case, a debtor's current monthly income shall include the debtor's spouse's income suggests that, in a single case, the spouse's income is not included in the debtor's current monthly income; otherwise, the parenthetical would be superfluous. However part (B) of section 101(10A), states that current monthly income also "includes any amount paid by any entity *other than the debtor (or in a joint case the debtor and the debtor's spouse*), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)...." 11 U.S.C. § 101(10A)(B). Applying the same reasoning as above, it appears that, in

> a single case, a debtor's spouse's income shall be included in the debtor's current monthly income to the extent that it is paid "on a regular basis for the household expenses of the debtor or the debtor's dependents." Thus, based upon the explicit language of section 101(10A), current monthly income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income.

Id. *at* 650-51 (footnotes omitted).

In this case, the non-filing spouse has been paying all of the household expenses of the Debtor both before and after the petition date. The specific amounts of the household expenses attributable to the Debtor are not itemized. As pointed out in Quarterman, the trustee has the burden of proving how much, if any, of a non-filing spouse's income should be imputed to a debtor when making the disposable income calculation. Id. *at* 652. It must also be acknowledged that any of the non-filing spouse's income which is imputed to a debtor should correspondingly be offset by the payment of the household expenses for which the debtor is also responsible. That is, determination of the portion of the non-filing spouse's income to be included at Part I of the CMI is based on the debtor's available deductions for household expenses at Part IV of the CMI. Only the portions of the non-filing spouse's income which are actually used to pay household expenses should be included in the Part I income calculation. Other income of the non-filing spouse not used to pay household expenses is not considered in calculating

either disposable income or projected disposable income.[2]

In some cases, this calculation could get dicey if a debtor claimed an expense deduction from her own income but it also appeared that the non-filing spouse paid the same expense. That complication is not an issue here. Rather, in this case, the Debtor’s husband pays all household expenses, and none of those expenses is alleged to be unreasonable or to exceed applicable national or local standards. The Debtor claims no additional expenses from her separate income.

The Debtor’s projected disposable income is, therefore, her net income of $730.95.[3] Because the Debtor’s Plan proposes to pay

---

[2] In presenting this case, neither the Trustee nor Debtor’s counsel addressed the availability of the marital adjustment at line 19 of Form B22C. Although a non-filing spouse’s gross income is required to be included at line 2 of Form B22C, line 19 allows a deduction of the portions of such non-filing spouse’s income which are “NOT regularly contributed to the household expenses ...” Use of line 19 appears to be the proper way, at least initially, to identify the portion of a non-filing spouses’s income which should not be included in calculating a debtor’s disposable income. In re Travis, 353 B.R. 520 (Bankr. E.D. Mich. 2006).

[3] The Trustee initially suggested in his Objection to Confirmation that the Debtor’s gross income without deducting her withholdings should be used in the calculation of projected disposable income. The Trustee apparently believed that the Debtor was bound by the amounts deducted at lines 30 and 31 of the original CMI for taxes and other mandatory payroll deductions. The amounts of taxes and other mandatory payroll deductions which should be used in calculating projected disposable income are, however, the actual amounts required to be paid or withheld for such obligations. To use an historical calculation could result in substantial hardship or windfall to a debtor and, in either case, would be unfair to all parties. In re Balcerowski, 353 B.R. 581, 590 (Bankr. E.D. Wis. 2006).

$731 per month, the Debtor is clearly contributing all of her projected disposable income to her Plan and the Plan should be confirmed.

For the foregoing reasons, the Trustee's objection to the Debtor's Chapter 13 Plan is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###